WR-83, 719-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/21/2015 10:12:28 AM
Accepted 9/21/2015 10:51:49 AM
ABEL ACOSTA
CLERK

# TEXAS COURT OF CRIMINAL APPEALS

_____

## CASE NO.

## WR-83,719-01

_____

FILED IN
COURT OF CRIMINAL APPEALS

September 21, 2015

ABEL ACOSTA, CLERK

## IN RE STATE OF TEXAS EX REL. ABELINO REYNA
### Relator

_____

**Trial Cause No. 2015-1955-2**
**In the 54th District Court, McLennan County**
**Honorable Matt Johnson, Presiding**

**Appellate Cause No. 10-14-00235-CR**
**10th Court of Appeals**
**Waco, Texas**

_____

## EMERGENT MOTION BY REAL-PART-IN-INTEREST MATTHEW ALAN CLENDENNEN TO VACATE STAY BASED ON RELATOR'S UNCLEAN HANDS

_____

**F. CLINTON BRODEN**
**TX Bar No. 24001495**
**Broden, Mickelsen, Helms & Snipes, LLP**
**2600 State Street**
**Dallas, Texas 75204**
**(214) 720-9552**
**(214) 720-9594(facsimile)**

**Attorney for Matthew Alan Clendennen**

## I

On August 7, 2015, the Tenth Court of Appeals entered its unanimous opinion conditionally granting a Writ of Mandamus in this case in the event the District Court did not withdraw its unconstitutional gag order by August 14, 2015.

On August 13, 2015 and upon Relator's opposed motion, this Court stayed the Court of Appeals' Writ of Mandamus and ordered the parties to brief three questions.

After the filing of the briefs in this case, Relator has continued to violate the very gag order he requested this Court to consider in his Petition for Writ of Mandamus to this Court.

## II

"Mandamus is an extraordinary remedy, not issued as a matter of right, but at the discretion of the court. Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles." *Riverfront Associates v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993). Indeed, this Court has noted that "equitable principles are necessarily involved when we consider whether mandamus should issue." *Smith v. Flack*, 728 S.W.2d 784, 792 (Tex. Cr. App.1987).

Of course, it is also well settled that "a party seeking an equitable remedy must do equity and come to court with clean hands." *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 220 (Tex. App. – San Antonio 2003). In fact, the law recognizes that

"the doctrine of unclean hands applies to a litigant whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, marked by a want of good faith or violates the principles of equity and righteous dealing." *Id*. at 221.[1]

In sum, "Texas courts have held that, because mandamus is governed to some extent by equitable principles, a party that comes before the court with unclean hands is **not entitled to issuance of a writ of mandamus**." *In re Simon Property (Delaware), Inc.* 985 S.W.2d 212, 215 (Tex. App .– Corpus Christi 1999) (emphasis added), *citing*, *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 552 n. 2 (Tex.1990).

## III

It appears that, on September 18, 2015, Relator, Abelino Reyna, again violated the very gag order he is asking this Court to uphold. Indeed, KWTX News in Waco, Texas reported:

> McLennan County District Attorney Abel Reyna, **in a brief statement**, said "someone violated their ethical and legal obligations" in making the material available to AP.
>
> "Our focus in the Twin Peaks matter will remain on the facts and the law and not it," he said.

---

[1]*See also Olmstead v. United States*, 277 U.S. 438, 483–484 (1928) (Brandeis, J. dissenting) (Regarding unclean hands: "The court's aid is denied only when he who seeks it has violated the law in connection with the very transaction as to which he seeks legal redress").

Attachment A hereto (emphasis added).[2]

Mr. Clendennen agrees that, *if it was a defense attorney* who released discovery materials to the AP, that attorney may very well have violated his/her "ethical and legal obligations."[3]  On the other hand, Mr. Clendennen strongly disagrees that Relator Reyna's focus has been on the "facts and the law" of this case and submits that Relator has fully contributed to "the ridiculousness that is occurring all around" the case.

## IV

Mr. Clendennen continues to submit that what has occurred and what is occurring in relation to the gag order is very transparent to even the casual observer. Immediately after the May 17, 2015 incident, Relator, personally, along with other state actors sought to fill the public's mind with pictures of roving "outlaw biker gangs" and, only when they believed that they sufficiently accomplished that task, Relator requested a gag order.  But it seems like even that is not enough for Relator.

---

[2]This is not the first time Relator Reyna has violated the gag order he seeks this Court to enforce using equitable principles.  On or about July 8, 2015, Mr. Reyna gave a press interview discussing the selection of the grand jury foreperson for the grand jury that could possibly consider Mr. Clendennen's case.  *See* Appendix 1 to Mr. Clendennen's September 14, 2015 brief.  During that interview, Mr. Ryna told the media: "That's the system.  He was chosen totally at random, like. the law says."

[3]Of course, the person who released the material may very well be a conscientious whistleblower from Relator's own office or from a law enforcement agency associated with the case.

Relator apparently believed he was creating a situation where Mr. Clendennen and his attorneys were denied their free speech rights under the United States and Texas Constitutions but he was free to continue to make statements to the press.

As explained in Mr. Clendennen's September 14, 2015 brief, the ruling by the Waco Court of Appeals was not an abuse of discretion for several reasons. First, the district court did not have jurisdiction to enter the gag order. Second, there was no "imminent or irreparable harm" or even a "substantial likelihood of prejudice" to justify the extraordinary broad gag order. Third, there was no indication that the District Court in this case considered *any* less restrictive means of preserving the rights to a fair trial- a trial that would be at least a year in the future- instead of imposing blanket restrictions on free speech rights. Fourth, a gag order in a case involving 177 defendants in different courts, involving related civil litigation in state and federal court, and involving judges who give their own press interviews is unworkable as a practical matter.

To compound all of this, it is now abundantly clear that Relator comes to this Court with unclean hands. Mr. Clendennen has been denied his free speech rights for more than two months and Relator has succeeded in persuading this Court to issue a stay and thereby continue the denial of such rights while, at the same time, Relator goes right on making statements to the media. For that reason alone, Mr. Clendennen

5

submits that the stay issued by this Court was improvidently granted and requests the

Court to dissolve the stay as soon as practical.

Respectfully submitted,

/s/F. Clinton Broden
F. CLINTON BRODEN
TX Bar No. 24001495
Broden, Mickelsen, Helms & Snipes, LLP
2600 State Street
Dallas, Texas 75204
(214) 720-9552
(214) 720-9594(facsimile)

Attorney for Matthew Alan Clendennen

# ATTACHMENT A

  

# Waco Officers Shot Bikers In Deadly Twin Peaks Gun Battle

*By: Staff And Wire Reports*



(File)

**WACO (September 18, 2015)** Waco police shot bikers with their rifles in the deadly May shootout that erupted outside of a restaurant, according to information in a 724-page incident report that was included in more than 8,800 pages of evidence reviewed exclusively by The Associated Press.

The material has not been made available to local media and Waco police have consistently said they would not release any details until the investigation is completed.

The Waco Police Department did not supply the material to AP, Sgt. W. Patrick Swanton said.

McLennan County District Attorney Abel Reyna, in a brief statement, said "someone violated their ethical and legal obligations" in making the material available to AP.

"Our focus in the Twin Peaks matter will remain on the facts and the law and not the ridiculousness that is occurring all around it," he said.

The evidence AP reviewed includes video footage of people fleeing the scene while shots ring out, and audio of police threatening to shoot people who rise from the ground.

It still isn't clear whose bullets caused the nine deaths.

At least 20 people were injured in the May 17 melee.

Waco Police Chief Brent Stroman said in June that three officers fired a total of 12 shots, but declined to say whether the shots struck anyone.

One of the officers assigned to stand by during the bikers' meeting on May 17 at the restaurant wrote in the incident report reviews by AP that during the shootout he saw two officers who "had multiple suspects down on the ground. (An officer) informed me they were engaged by gunfire as they exited their marked police unit. (The officer) said they both returned fire and struck multiple suspects with their patrol rifles."

In another account in the report, another officer wrote that one of the officers at the scene spotted a man firing into a crowd and fired one round "to stop the individual from shooting anyone else," AP reported.

AP reported that after the shooting ceased, an officer asked everyone with a weapon to raise a hand, according to the incident report.

Nearly everyone did, the report said.    **Share**

The incident report also shows Waco police have a separate investigation.

KWTX-TV News 10 6700 American Plaza Waco, Texas 76712 (254) 776-1330 Fax (254) 751-1088
Copyright © 2002-2015 - Designed by Gray Digital Media - Powered by Clickability 328200821 - kwtx.com/a?a=328200821



I, F. Clinton Broden, do hereby certify that Attachment A is a true, correct and exact copy of an article downloaded from:

http://www.kwtx.com/home/headlines/Waco-Officers-Shot-Bikers-In
-Deadly-Twin-Peaks-Gun-Battle-328200821.html?ref=821&device=p
hone&c=y

<u>/s/F. Clinton Broden</u>
F. CLINTON BRODEN

## CERTIFICATE OF SERVICE

I, F. Clinton Broden, do hereby certify that, on this 21st day of September, 2015, I caused a copy of the foregoing document to be served by electronic means, on:

McLennan County District Attorney
219 N 6th St
Waco, Texas 76701

Tenth Court of Appeals
501 Washington Ave.
Waco, Texas 76701

/s/ F. Clinton Broden
F. Clinton Broden