WR-83, 719-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/12/2015 10:36:17 AM
Accepted 10/13/2015 11:36:01 AM
ABEL ACOSTA
CLERK

# TEXAS COURT OF CRIMINAL APPEALS

_____

### CASE NO.

### WR-83,719-01

_____

RECEIVED IN
COURT OF CRIMINAL APPEALS

October 13, 2015

ABEL ACOSTA, CLERK

## IN RE STATE OF TEXAS EX REL. ABELINO REYNA
### Relator

_____

**Trial Cause No. 2015-1955-2**
**In the 54th District Court, McLennan County**
**Honorable Matt Johnson, Presiding**

**Appellate Cause No. 10-14-00235-CR**
**10th Court of Appeals**
**Waco, Texas**

_____

## REPLY BY REAL-PART-IN-INTEREST MATTHEW ALAN CLENDENNEN

_____

**F. CLINTON BRODEN**
**TX Bar No. 24001495**
**Broden, Mickelsen, Helms & Snipes, LLP**
**2600 State Street**
**Dallas, Texas 75204**
**(214) 720-9552**
**(214) 720-9594(facsimile)**

**Attorney for Matthew Alan Clendennen**

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS...............................................................................2

TABLE OF AUTHORITIES.........................................................................3

REPLY.......................................................................................................4

CERTIFICATE OF SERVICE.....................................................................9

CERTIFICATE OF COMPLIANCE............................................................10

# TABLE OF AUTHORITIES

**Page**

*City of Fredericksburg v. Bopp*, 126 S.W.3d 218 (Tex. App. – San Antonio 2003)..........................................................................................................5

*In re Simon Property (Delaware), Inc.* 985 S.W.2d 212 (Tex. App .– Corpus Christi 1999) ..........................................................................................5

*Kentucky v. King,* 131 S.Ct. 1849 (2011)..................................................7

*Riverfront Associates v. Rivera*, 858 S.W.2d 366 (Tex. 1993)...............................5

*Smith v. Flack*, 728 S.W.2d 784 (Tex. Cr. App.1987)..............................................5

*United States v. Wilson,* 925 F.Supp.2d 410 (E.D.N.Y. 2013)................................7

## REPLY

On the eve of submission, an amicus brief was filed purportedly on behalf of "nine Texas district attorneys." Nevertheless, only eight district attorneys are actually identified in the brief.[1] Whether eight or nine, Mr. Clendennen believes a brief reply is necessary in order to address the issues raised by amici.

While not raised by Relator, amici's brief discusses the "affirmative constitutional duty" of trial courts "to minimize the effects of prejudicial pretrial publicity." *See* Amicus Curiae Brief of Nine Texas District Attorneys ("Amicus Brief") at 2-3, 10. Nevertheless, amici does not acknowledge that this was *not* a gag order entered by the trial court *sua sponte*. Instead, it was a gag order requested by Relator minutes before an unrelated hearing with little time for consideration by the trial court.

Next, while Relator's brief simply continued his canard that he sought the gag order in an altruistic effort to preserve the rights of Mr. Clendennen and other defendants,[2] amici now claims it was actually sought to preserve the "State's interest in a fair trial." *See* Amicus Brief at 11. While amici's argument is admittedly less

---

[1]Seven are identified on the Identity of Amicus Curiae page in addition to District Attorney Rene Pena, the author of the brief.

[2]Not surprisingly, despite the numerous amicus briefs filed in this matter, not one of the other 176 individuals charged in this matter has filed an amicus brief in support of the gag order.

disingenuous than Relator's argument, amici turns a blind eye to the fact that, prior to seeking the gag order, the State engaged in an unrelenting campaign using world wide media outlets which was designed to scare the public with pictures of roving "biker gangs" and only sought the gag order when it concluded that it had sufficiently accomplished that task. As previously pointed out by Mr. Clendennen, "[a]lthough mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles." *Riverfront Associates v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993); *Smith v. Flack*, 728 S.W.2d 784, 792 (Tex. Cr. App.1987). Moreover, "a party seeking an equitable remedy must do equity and come to court with clean hands." *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 220 (Tex. App. – San Antonio 2003). Consequently,"Texas courts have held that, because mandamus is governed to some extent by equitable principles, a party that comes before the court with unclean hands is **not entitled to issuance of a writ of mandamus**." *In re Simon Property (Delaware), Inc.* 985 S.W.2d 212, 215 (Tex. App .– Corpus Christi 1999) (emphasis added), *citing*, *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 552 n. 2 (Tex. 1990).

Next, while the eight district attorneys claim that "only the willfully blind cannot see why" lesser restrictive means do not exist other than to impose the comprehensive gag order on Mr. Clendennen (Amicus Brief at 10), they point to nothing to indicate that the trial court actually considered these lesser restrictive

means. Moreover, like Relator, amici wholly fail to explain how a gag order imposed in *one* criminal case- in a circumstances where there are (1) 176 similarly situated criminal cases (many in other courts), (2) related civil cases in state and federal court, and (3) judges who make their own comments to the media regarding the case so-effectively offers any of the protections identified by amici.[3]

The eight or nine district attorneys conclude their amici brief by accusing Mr. Clendennen and the amici who submitted briefs on his behalf of not proposing a valid alternative to a gag order. *See* Amicus Br. at 10-11. Therefore, let Mr. Clendennen be very clear and restate explicitly what he has previously stated at least implicitly. This case should be handled like many other high profile cases. Article I, Section 8 of the Texas Constitution and the First Amendment should be fully respected and the parties should be strictly bound by the Rules of Professional Conduct governing Pretrial Publicity. *See* Tex. R. Prof. Conduct 3.07. If and when it gets closer to trial (recall Mr. Clendennen has not even been indicted and his trial is likely at least a year away even assuming a grand jury was to indict him), the district court could revisit

---

[3]Amici points to the "daunting and costly task' of selecting 5,665 panelists for the 177 "potential trials." *See* Amicus Br. at 10. First, Mr. Clendennen has much more faith in the citizens of McLennan County than does amici. It is highly likely that no fairly constituted grand jury of McLennan County citizens will indict many of the 177 since a large majority were mere witnesses. Second, amici, who write in support of Relator, fail to ask where Relator's concern was about this "daunting and costly task" when he gave a television interview only a few days after the incident in which he announced all 177 were apparently guilty simply because they were not acting sufficiently like victims in Relator's mind by cooperating with police.

the necessity of a *narrow* gag order after first fully considering alternatives such as "a searching voir dire; emphatic jury instructions; emphatic warnings to the press and parties; an anonymous jury; and sequestration of jurors." *United States v. Wilson,* 925 F.Supp.2d 410, 412 (E.D.N.Y. 2013).

On the other hand, what should never be viewed as a viable solution is to allow this Court to be played as a pawn in Relator's game. Relator and the State should not be allowed to engage in the wholesale arrest of numerous innocent individuals using fill-in-the-name criminal complaints; then give numerous interviews proclaiming their guilt while, at the same time, scaring the public with images of roving "biker gangs;" and then go to a court minutes before an unrelated hearing and request a comprehensive gag order; then seek a type of relief from this Court that is controlled by equitable principles while also brazenly violating the very gag order Relator requested. To permit such gamesmanship will create a very dangerous precedent. Indeed, courts recognize that parties to the criminal justice system should not be allowed to manufacture particular circumstances and then rely upon those circumstances to request relief from the courts.[4]

---

[4] *Cf. Kentucky v. King,* 131 S.Ct. 1849, 1858 (2011)

Respectfully submitted,


/s/F. Clinton Broden
F. CLINTON BRODEN
TX Bar No. 24001495
Broden, Mickelsen, Helms & Snipes, LLP
2600 State Street
Dallas, Texas 75204
(214) 720-9552
(214) 720-9594(facsimile)

Attorney for Matthew Alan Clendennen

8

# CERTIFICATE OF SERVICE

I, F. Clinton Broden, do hereby certify that, on this 12th day of October, 2015,

I caused a copy of the foregoing document to be served by electronic means, on:

McLennan County District Attorney
219 N 6th St
Waco, Texas 76701

Tenth Court of Appeals
501 Washington Ave.
Waco, Texas 76701

/s/ F. Clinton Broden
F. Clinton Broden

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Tex. R. App. P.9.4 because this brief contains  674  words, excluding the parts of the brief exempted by the rule.


/s/ F. Clinton Broden
F. Clinton Broden